UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID L. SCHWEIN,

             Plaintiff,                                Case No. 13-12389
                                                      Honorable Thomas L. Ludington

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

             Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART,
DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

      David Schwein contends that State Farm Mutual Automobile Insurance Company (State Farm) owes him damages for breaching the parties' insurance contract and violating the Michigan Consumer Protection Act (MCPA). Schwein originally filed his complaint in Michigan state court. State Farm removed the action to this Court on May 31, 2013. State Farm believes some of David Schwein's allegations are without merit, and so it filed a partial motion to dismiss on June 7, 2013. Schwein responded on July 1, 2013, and State Farm filed a reply brief two weeks later.

      In his response, Schwein rails against State Farm's position. He argues that both his breach of contract claim and his MCPA claim are meritorious, and should not be dismissed. Some of Schwein's arguments have merit, and some do not. Based on what follows, State Farm's motion for partial dismissal will be granted in part and denied in part.

**I**

      David Schwein was in a car accident in 1980, and he was badly hurt. He suffered various injuries—including a traumatic-brain injury—and has since been confined to a wheelchair,

"unable to care for himself."  Pl.'s Compl. ¶ 5, *attached as* Def.'s Notice Removal Ex. 1, ECF No. 1.  Schwein's family members stepped in to provide services such as "transfers, toileting, dressing, showering/bathing, transportation, meal preparation, shopping, laundry, etc."  Pl.'s Compl. ¶ 30.  All the things Schwein could no longer do on his own.  While consuming his family's time and energy, Schwein's injuries also necessitated additional expenses for housing and accommodations, transportation, equipment, medical devices, and therapy—expenses he never incurred while healthy.

At the time of the accident, Schwein maintained a no-fault auto insurance policy issued by State Farm.  After the accident, he filed a claim for personal protection insurance (PIP) benefits under the policy to pay the costs he was incurring and to reimburse his family for their time and care.  And since receiving his application, State Farm has paid benefits on Schwein's behalf.[1]

But Schwein claims that State Farm's policy provides for more than it has paid.  He says State Farm was aware of his need for and receipt of "24/7 attendant care and LPN/RN level care . . . since the time of the accident."  *Id.* at ¶ 9.  And while he acknowledges that State Farm "has made some payments," Schwein asserts "it has not paid for all care provided and it has not paid for care at reasonable rates[.]"  *Id.*  He goes on.  According to Schwein, State Farm knew about his need for housing and accommodations, his need for transportation, and his need for various equipment and medical devices; all due to his "accident-related injuries."  *See id.* at ¶¶ 10–12. Schwein says that despite this knowledge, State Farm "failed to fully investigate his claim" and did not pay all of the benefits it owed.  *Id.* at ¶¶ 31–33.

---

[1] State Farm indicates that "[o]ver the course of the past thirty years" it has paid "in excess of one-million dollars in benefits[.]"  Def.'s Mot. 1.

On April 29, 2013, Schwein filed a complaint and jury demand in Michigan's Midland County Circuit Court. State Farm removed the case to this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a). The complaint alleges two claims: breach of contract (Count I) and violations of the Michigan Consumer Protection Act (MCPA) (Count II). On June 7, 2013, State Farm filed a partial motion to dismiss, attacking Schwein's complaint under Federal Rule of Civil Procedure 12(b)(6).

## II

State Farm asserts that Schwein's complaint should be partially dismissed because it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) requires that a pleading, aside from establishing jurisdiction and a demand for relief, contain a "short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified that to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, and accept all factual allegations as true. *Twombly*, 550 U.S. at 570.

Because jurisdiction in this case is predicated upon diversity, Michigan substantive law applies. As has long been established, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, "federal courts sitting in diversity apply state

substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996).

## III

Addressing Count I, State Farm argues that "Michigan law expressly prohibits [Schwein] from recovering any 'No Fault' benefits that were incurred more than one year before the filing of his Complaint (i.e. April 29, 2012)." Def.'s Mot. ¶ 2, ECF No. 7. Alternatively, State Farm asserts that Schwein's breach of contract claim should be limited to conduct within the past six years under "Michigan's six-year statute of limitations for breaches of contract[.]" *Id.* Regarding the MCPA claim in Count II, State Farm offers three reasons to dismiss the claim "in its entirety." Def.'s Br. 1, ECF No. 7. Each of the issues will be addressed below.

## A

State Farm first argues that Schwein is foreclosed from seeking recovery under Michigan's No Fault Act (Mich. Comp. Laws § 500.3145) for damages that accrued before April 29, 2012. At this point, State Farm is correct, and the portion of Schwein's complaint seeking damages under the No Fault Act before April 29, 2012 will be dismissed without prejudice.

## 1

The Michigan no-fault act provides in relevant part:

An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. *However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.*

Mich. Comp. Laws § 500.3145(1) (emphasis added); *see also Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 447 (Mich. 2008). The first two provisions of subsection 3145(1) establish when an action for PIP benefits must be brought. The "one-year-back" rule, as the final provision has come to be known, limits recovery of PIP benefits to those incurred only after one year before the date the no-fault action commenced. PIP benefits include "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a).

In its motion to dismiss, State Farm emphasizes that Schwein can only recover benefits for losses incurred after April 29, 2012 (one year before he filed his complaint). State Farm explains that "[t]he 'one-year-back' rule is not a discretionary one, and it leaves no room for flexibility." Def.'s Br. 5. Schwein takes umbrage. He cites *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539 (Mich. 2005) and responds that "equitable considerations can prevent the application of the one year back rule[.]" Pl.'s Resp. 5.

Schwein contends that State Farm's conduct should trigger the doctrine of equitable estoppel; where the Court (and then the jury) can ignore the one-year-back rule's limitation on damages because either State Farm committed fraud or other unusual circumstances call for the doctrine's application.[2]   Schwein is correct that unusual circumstances, such as fraudulent conduct, can foreclose the one-year-back rule's application through equitable estoppel. *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 450 (Mich. 2008); *see also Paquette v. State Farm Mut. Auto Ins. Co.*, No. 279909, 2009 WL 2168918, at *3 (Mich. Ct. App. July 21, 2009); *Devillers*, 702 N.W.2d at 556. But the doctrine of equitable estoppel only applies "when the facts calling for it are unquestionable and the wrong to be prevented undoubted." *Amerisure Ins.*

---

[2] Pursuant to *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 556 (Mich. 2005), unusual circumstances involving mutual mistake could also support disregarding the one-year-back rule, but Schwein has made no indication a mutual mistake existed between the parties.

*Co. v. Progressive Michigan Ins. Co.*, No. 299754, 2011 WL 5965800, at *3 (Mich. Ct. App. Nov. 29, 2011) (citing *Kamalnath v. Mercy Mem. Hosp. Corp.*, 487 N.W.2d 499 (Mich. Ct. App. 1992)).

Further, application of the doctrine of equitable estoppel in the insurance context requires the insured to establish "that the insurer induced a belief through acts, representations, or silence regarding coverage or lack thereof, the insured justifiably relied on this belief, and the insured was prejudiced as a result of the reliance." *Paquette*, No. 279909, 2009 WL 2168918, at *5. Schwein's pleadings do not fulfill these requirements—no facts are identified that would justify the application of the doctrine of equitable estoppel.

## 2

Schwein first indicates that certain "unusual circumstances" implicate the doctrine of equitable estoppel, and that as a consequence, an exception to the one-year-back rule applies. He alleges the doctrine is implicated because "State Farm did not fully explain benefits[.]" Pl.'s Resp. 9. Schwein advances *Paquette*, where the defendant's failure to explain policy benefits— when "testimony at trial revealed that defendant did have such an obligation," *Paquette*, No. 279909, 2009 WL 2168918, at *5—was enough to occasion equitable estoppel. Because the defendant in *Paquette* was State Farm, Schwein concludes that it must have been obligated to explain benefits in this case, too: "[t]he admissions of State Farm regarding its claims handling philosophy and practice of explaining benefits fully applies with the force and vigor here as in *Paquette*." Pl.'s Resp. 9. Notably, Schwein offers no authority for the proposition that testimony concerning an insurer's obligations, presented in another case, establishes those obligations in every other action involving the same insurer.

Indeed, just because a claims administrator testified in *Paquette* that State Farm incurred an obligation to provide notice of available benefits under the no-fault policy involved in that case does not mean the testimony applies here. This is a different case—involving a different policy, different people, and a different injury—requiring Schwein to identify the particular facts supporting his claims. For equitable estoppel to apply, he must demonstrate that State Farm disregarded an obligation that it incurred in *this* case. Absent relevant authority, he cannot import an obligation from a previous case just because it involved the same insurer.

And without the same or similar facts, the duty that State Farm incurred in *Paquette* does not apply here. As the *Paquette* court clarified, "the lack of a statutory obligation" to explain benefits was only irrelevant because there was testimony, *in that case*, "that defendant's policies and procedures involved providing family members with notice of the benefits available and making payment for those benefits when the family rendered services." *Paquette*, No. 279909, 2009 WL 2168918, at *5. Schwein does not identify any facts to demonstrate that State Farm accepted an obligation of explaining, to him or to family members, the benefits provided for in his policy. Nor does he allege that the No Fault Act obligated State Farm to explain his benefits.[3]

Aside from three vague, one-line allegations ("State Farm's refusal to investigate, its refusal to pay when liability was clear, and its delay . . . are additional factors that support equitable estoppel," Pl.'s Resp. 9), Schwein offers nothing to demonstrate that equitable estoppel should limit application of the one-year-back rule in this case. Simply put, Schwein's pleadings

---

[3] While Schwein does make allegations that State Farm was obligated to explain benefits under his MCPA claim, that obligation is established by Chapter 20 of the Michigan Insurance Code, not the No Fault Act. Indeed, as the court acknowledged in *Paquette*, there is no statutory obligation to explain benefits under the No Fault Act. *See Paquette*, No. 279909, 2009 WL 2168918, at *5.

do not identify any "undoubted" wrong that must be prevented through application of the doctrine of equitable estoppel. *See Amerisure*, No. 299754, 2011 WL 5965800, at *3.

Moreover, even if Schwein had established such an obligation on State Farm's part, he does not allege that its failure to explain benefits "induced a belief" that he "justifiably relied on." Accordingly, Schwein's argument that equitable estoppel should apply here is without merit. He has not alleged the requisite factual background demonstrating unusual circumstances to support application of the doctrine.

**3**

Similarly, any allegation that State Farm committed fraud is presently insufficient to foreclose application of the one-year-back rule. Allegations of fraud "must satisfy the particularity pleading requirements of Rule 9(b)." *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008) (citing *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004)). At a minimum, a complaint asserting fraudulent conduct must "allege the time, place and contents of the misrepresentations" relied upon. *Frank*, 547 F.3d at 570 (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984)).[4]

Schwein does not indicate when or where State Farm committed fraudulent conduct or material misrepresentations. He does not identify any misrepresentations. His vague allegation that State Farm "did not fully explain benefits," Pl.'s Resp. 9, is not sufficient to satisfy fraud's

---

[4] Although federal pleading requirements apply here, *see Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001) ("While state law governs the burden of proving fraud at trial in a diversity action in federal court, the procedure for pleading fraud in all diversity suits in federal court is governed by the special pleading requirements of Fed. R. Civ. P. 9(b).") (citation omitted), Michigan pleading requirements are no different: "In allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity." *Kassab v. Michigan Basic Prop. Ins. Ass'n*, 491 N.W.2d 545, 548 n.12 (Mich. 1992) (citation omitted), *overruled on other grounds by Haynes v. Neshewat*, 729 N.W.2d 488 (Mich. 2007); *see also Munem v. Best Buy Co.*, No. 224366, 2002 WL 43484, at *1 (Mich. Ct. App. Jan. 11, 2002) (per curiam) ("Plaintiffs initially contend that the trial court erred in ruling that a claim brought under the MCPA is held to the requirement of particularized pleading stated in MCR 2.112(B)(1), as is common-law fraud. We disagree.").

particularity pleading requirement.  Thus, at this point, the No Fault Act's one-year-back rule cannot be ignored because of fraudulent conduct.

**4**

Finally, Schwein argues that the Court should not consider the one-year-back rule when addressing State Farm's motion to dismiss under Rule 12(b)(6).  This argument is also unpersuasive.

It is true that some Michigan courts label the one-year-back rule as an "affirmative defense."  *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Ins. Co. of N. Am.*, 420 N.W.2d 120, 121 (Mich. Ct. App. 1988).  But the Sixth Circuit has established that while "[c]ourts generally cannot grant motions to dismiss on the basis of an affirmative defense," they may do so when "the plaintiff has anticipated the defense and explicitly addressed it in the pleadings."  *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (quoting *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012)).

In his complaint, Schwein explicitly addressed any possible limitations defenses such as the one-year-back rule: "Furthermore, State Farm's actions and inactions constitute equitable estoppel and fraudulent concealment that prevent State Farm from raising a statute of limitations or other damages limitations defenses."  Pl.'s Compl. ¶ 28; *see also* Pl.'s Resp. 8 ("Although it is not necessary to plead in anticipation of potential affirmative defenses such as the one year back rule, the complaint in this case does raise equitable estoppel[.]") (citation omitted).  Accordingly, the one-year-back rule is a proper basis for dismissing a portion of Schwein's complaint.

As Schwein's pleadings do not implicate equitable estoppel due to fraud or other unusual circumstances, the one-year-back rule applies with full force.  Accordingly, Schwein's recovery

under the No Fault Act is limited to losses incurred on or after April 29, 2012.[5]  State Farm's motion will be granted on this point.

**B**

State Farm next addresses Schwein's MCPA claim, arguing that it should be dismissed in its entirety.  It offers three alternate rationales: (1) the MCPA does not address post-sale conduct, which is all that Schwein complains of; (2) the MCPA does not create a cause of action against insurance companies; and (3) there is no period for which Schwein is eligible for damages under the MCPA.  Again, each argument will be addressed in turn.

**1**

A discussion of the MCPA itself is necessary to the analysis of the parties' arguments.  The MCPA generally prohibits the use of unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce.  Mich. Comp. Laws § 445.903(1).  When involving actions for fraud or mistake, claims under the MCPA "must state the circumstances with particularity."  *Lipov v. Louisiana-Pac. Corp.*, No. 12-CV-439, 2013 WL 3805673, at *3 (W.D. Mich. July 22, 2013) (collecting cases).

Pursuant to the MCPA:

> An action under this section shall not be brought more than 6 years after the occurrence of the method, act, or practice which is the subject of the action nor more than 1 year after the last payment in a transaction involving the method, act, or practice which is the subject of the action, whichever period of time ends at a later date.  However, when a person commences an action against another person, the defendant may assert, as a defense or counterclaim, any claim under this act arising out of the transaction on which the action is brought.

Mich. Comp. Laws § 445.911(7).  The MCPA provides that an action must commence either 6 years after the complained-of conduct, or (like the No Fault Act) within one year of the last

---

[5] Finding that the one-year-back rule does apply, there is no need to reach State Farm's argument that even if the one-year-back rule does not apply, "Michigan's statute of limitations for breach of contract actions would limit [Schwein's] recovery."  Def.'s Br. 6 n.1.

payment resulting from a transaction involving complained-of conduct.  Notably, however, the MCPA does not include a limitation on recoverable damages.

Relevant here, prior to March 28, 2001, the MCPA addressed "private actions . . . against an insurer[.]"  *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 39 (Mich. 1999).  In *Smith*, the Michigan Supreme Court established that,

> Although § 4(1)(a) generally provides that transactions or conduct "specifically authorized" are exempt from the provisions of the MCPA, § 4(2) provides an exception to that exemption by permitting private actions pursuant to § 11 arising out of misconduct made unlawful by chapter 20 of the Insurance Code. Therefore, the exemptions provided by §§ 4(1)(a) and 4(2)(a) are inapplicable to plaintiff's MCPA claims to the extent that they involve allegations of misconduct made unlawful under chapter 20 of the Insurance Code.

*Smith*, 597 N.W.2d at 39.

In 2000, however, the Michigan Legislature amended the MCPA to specifically establish that "[t]his act does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by chapter 20 of the insurance code of 1956[.]"  Mich. Comp. Laws § 445.904(3).  This amended language took effect March 28, 2001. Subsequently, "the MCPA is not applicable to insurance companies."  *Cromer v. Safeco Ins. Co. of Am.*, No. 09-CV-13716, 2010 WL 1494469, at *4 (E.D. Mich. Apr. 14, 2010).

But this is not to say a plaintiff can never bring an action against an insurer under the MCPA.  Noted above, an action under the MCPA must commence either within six years of alleged misconduct, or within one year of a payment resulting from alleged misconduct.  So any plaintiff that has received a payment within the past year—if the payment resulted from a transaction involving misconduct under the MCPA—can commence a case.  Of course, such a plaintiff would not be able to recover for any misconduct that occurred after March 28, 2001 (due to the operation of the MCPA amendments).  Therefore, under the MCPA, a "plaintiff's

- 11 -

claims for conduct arising before March 28, 2001, remain viable to the extent that they were timely filed." *Converse v. Auto Club Grp. Ins. Co.*, No. 293303, 2011 WL 744940, at *7 (Mich. Ct. App. Mar. 3, 2011), *rev'd on other grounds*, 821 N.W.2d 679 (Mich. 2012) (allowing a plaintiff to seek recovery under the MCPA, pursuant to a complaint filed in December 2005, for "damages resulting from the methods, acts or practices violative of the MCPA based on conduct by defendant occurring from July 29, 1992 to March 28, 2001 [the effective date of MCL 445.904(3)]." (brackets in original)).   With that established, State Farm's arguments will be addressed.

**2**

State Farm first challenges Schwein's MCPA claim by asserting that the MCPA does not cover the conduct complained of here.  Specifically, State Farm argues that Schwein takes issue only with its post-sale conduct—not the conduct that led to the issuance of the relevant policy. State Farm emphasizes that the MCPA prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]"  Def.'s Br. 7 (quoting Mich. Comp. Laws § 445.903(1)).  Because State Farm believes trade or commerce does not address "post-sale issues," *id*., it concludes the MCPA cannot cover Schwein's claims.  The Court disagrees.

Schwein asserts that "State Farm has engaged in unfair, unconscionable, or deceptive conduct in violation of Chapter 20 of the Michigan Insurance Code[.]"  Pl.'s Compl. ¶ 34.  "In particular, State Farm has violated its duties to act honestly and to explain benefits[.]"  *Id*. at ¶ 35 (citing Mich. Comp. Laws § 500.2006(3)).  Schwein does not stop there.  He further contends:

> State Farm also violated its obligations under MCL § 500.2026, including, but not limited to, the duty not to misrepresent facts or coverage, the duty to communicate promptly, the duty to affirm or deny coverage timely, the duty to promptly investigate claims, the duty to effectuate prompt, fair, and equitable settlement of claims, the duty not to compel insureds to institute litigation by

> underpaying, the duty to identify payments and coverage, and/or the duty to
> explain basis for denial or offer of compromise.

Pl.'s Compl. ¶ 36 (citing Mich. Comp. Laws §§ 500.2026(1)(a), (b), (e), (d), (f), (g), (j), (n)). Schwein then indicates that "State Farm's violations of Chapter 20 of the Insurance Code constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce as set forth in the [MCPA]." Pl.'s Compl. ¶ 37 (citing Mich. Comp. Laws §§ 445.903(a), (c), (e), (n), (s), (x), (bb), (cc)).

State Farm, in response, relies on *Zine v. Chrysler Corp.*, 600 N.W.2d 384 (Mich. Ct. App. 1999) for the proposition that the Michigan Legislature intended to limit the application of the MCPA to "misconduct related to the sales transaction." Def.'s Br. 7. In *Zine*, the Michigan Court of Appeals established that a "transaction" for purposes of the MCPA is "the business conducted between the parties[.]" *Zine*, 600 N.W.2d at 397. In that case, the plaintiff alleged that the defendant violated the MCPA when it failed to "reveal information material to" an agreement to buy a truck. *Id.* The plaintiff alleged misconduct under two specific provisions of the MCPA: "Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction," Mich. Comp. Laws § 445.903(1)(n); and "Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner," Mich. Comp. Laws § 445.903(1)(cc).

The court concluded that subsection 3(1)(cc), which "refers to the failure to reveal information material to the transaction," could be reasonably understood to refer only "to information withheld during the negotiations and up to the time the transaction, in this case a sale of a vehicle, is complete." *Zine*, 600 N.W.2d at 397. As the court explained, "[i]nformation that was not included in a disclosure made *after* the 'transaction'—i.e. the sale of the vehicle—was completed would not be material to that transaction." *Id.* (emphasis in original). Accordingly,

- 13 -

the court determined that plaintiff's claims, which only involved post-transaction conduct, were not actionable under subsection 3(1)(cc).

The court's conclusion concerning subsection 3(1)(n) was vastly different. The court noted as follows:

> Subsection 3(1)(n), however, refers to causing a party to the transaction to misunderstand the party's legal rights, not to representations affecting the transaction itself. Because representations made both before and after the transaction has been completed could cause a party to the transaction to misunderstand the party's legal rights, subsection 3(1)(n) can reasonably be understood to refer to acts that occur before *and after* the transaction has been concluded.

*Id*. (emphasis in original). Thus, in the very case State Farm relies upon, the Michigan Court of Appeals established that the MCPA can address conduct that occurs after a transaction has concluded, undermining any argument to the contrary.

State Farm did not miss this point; it simply attempts to distinguish it. According to State Farm, the court in *Zine* "fail[ed] to address the principle of statutory construction"—that the Michigan Legislature intended the MCPA to address only transactional abuses—and therefore *Zine* is rendered "materially distinguishable on this point." Def.'s Br. 8 n.2.

Aside from *Zine* (which, as explained, does not really support State Farm's position), State Farm has not advanced any authority in support of the proposition that the MCPA cannot address post-sale conduct. And there are cases that support the countervailing position. *See*, *e.g.*, *Zine*, 600 N.W.2d at 397. In *Van Emon v. State Farm Mut. Auto. Ins., Co.*, No. 05-CV-72638, 2008 WL 2446962 (E.D. Mich. June 18, 2008), the court faced a situation highly similar to that here. In *Van Emon*, the plaintiff alleged that the defendant (State Farm) "violated Chapter 20 of the Insurance Code as set forth in the MCPA[.]" *Id*. at *12. There, as here, State Farm

- 14 -

argued that the MCPA "is limited in scope to the presentation of a product and the inducement to buy it," not post-sale conduct. *Id*. at *13. The court roundly rejected the notion:

> State Farm has cited no case law or other authority to support this claim. State Farm's argument that the MCPA only applies to alleged improprieties in the marketing, sale or advertising of the policy in question is not borne out by the language of the statute itself or by the case law interpreting it.

*Id*. The court concluded, "[c]ontrary to State Farm's arguments, plaintiff's claims are not limited to circumstances surrounding the sale or marketing of the policy." *Id*. at *14.[6]

The conclusion here is no different. Schwein alleges violations of Chapter 20 of the Insurance Code with corresponding violations of the MCPA; specifically, subsections 903(1)(a), (c), (e), (n), (s), (x), (bb), and (cc). And while the court in *Zine* established that subsection 903(1)(cc) does not extend to post-sale conduct, it also established that at least subsection 903(1)(n) can. *See Zine*, 600 N.W.2d at 397. Some of the other subsections Schwein relies upon may be restricted to pre-sale conduct (as with subsection 903(1)(cc)). But it is just as apparent that some may be more expansive, just like subsection 903(1)(n). Indeed, subsection 903(1)(s) prohibits the failure "to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." Mich. Comp. Laws § 445.903(1)(s). There is no indication that post-transaction conduct cannot constitute the failure to reveal a material fact which tends to mislead or deceive. So while it is true that not *all* of the MCPA provisions Schwein cites cover post-transaction conduct, at least some of them may, and the MCPA claim will not be dismissed at this juncture.

---

[6] Despite this determination, the court in *Van Emon* went on to dismiss the plaintiff's MCPA claim (on summary judgment) because the plaintiff did "not come forward with any evidence to support those claims." *Van Emon*, No. 05-CV-72638, 2008 WL 2446962, at *14.

**3**

State Farm's second argument can be disposed of in short order. It contends that Schwein's MCPA claim "fails for a second, independent reason." Def.'s Br. 9. The reason State Farm provides is simple: the 2000 MCPA amendments prevent actions against insurers for conduct occurring after March 28, 2001. Thus, State Farm requests that the Court "dismiss [Schwein's] MCPA claim for conduct that has arisen after the effective date of the MCPA 2000 Amendment." *Id.* at 10.

But Schwein does not contest the point. In fact, after acknowledging State Farm's argument, he indicates that he "does not dispute this and the complaint does not make a claim under the MCPA for conduct after [March 28, 2001], despite State Farm's deliberate attempt to distort the allegations of the complaint in order to create a red herring argument." Pl.'s Resp. 19 n.11. And Schwein's complaint backs up his statement: "State Farm's actions that violated Chapter 20 of the Insurance Code occurred prior to March 2001[.]" Pl.'s Compl. ¶ 38. State Farm's argument is without merit and does not constitute an "independent reason" to dismiss Schwein's MCPA claim.

**4**

Finally, State Farm alleges that there is no period of time for which Schwein can recover damages under the MCPA. Once again, the Court disagrees, and Schwein's MCPA claim will not be dismissed.

State Farm engages in two simple syllogisms to reach the conclusion that Schwein cannot recover damages. It first suggests that Schwein's complaint is untimely pursuant to § 445.911(7) (under both the six-year-limitation provision and the one-year-after-payment provision), and he therefore cannot recover on any conduct that occurred prior to March 2001. State Farm then

indicates that Schwein's MCPA claim simply "repackag[es] and relabel[s] his No-Fault claim as one for damages under the MCPA." Def.'s Mot. 13. As a result, State Farm believes the one-year-back rule should apply to bar damages for conduct that occurred before April 29, 2012. Because Schwein only seeks damages for conduct occurring before March 2001 under either formulation, State Farm argues he cannot recover. State Farm's arguments, however, are misplaced.

**i**

State Farm first argues the MCPA claim is untimely. It indicates that Schwein "filed his Complaint on April 29, 2013. This was more than 12 years *after* the effective date of the MCPA 2000 Amendment which barred claims . . . against insurance companies." Def.'s Br. 11 (emphasis in original). State Farm concludes "[t]he Complaint is therefore untimely under the six-year period referenced in MCL § 445.911(7)." *Id*. The Court agrees. The six-year limitation in subsection 911(7) clearly indicates that "[a]n action under this section shall not be brought more than 6 years after the occurrence of the method, act, or practice which is the subject of the action[.]" Mich. Comp. Laws § 445.911(7). Schwein only complains of conduct that occurred before March 2001, and so this action cannot be timely under the MCPA's six-year limitation.

Of course, subsection 911(7) also indicates that a complaint may be brought within one year after a payment in a transaction involving the method, act, or practice which is the subject of the action. *Id*. So if Schwein's complaint was filed within one year after a payment resulting from a transaction plagued by misconduct, it is irrelevant that the complaint was not filed within six years of the complained-of conduct. This is just the situation Schwein presents.

State Farm argues that the last payment to Schwein that "could have conceivably violated the MCPA . . . necessarily occurred prior to March 2001, the effective date of the MCPA 2000

- 17 -

Amendment." Def.'s Br. 11. In support of this argument, State Farm offers a conclusion: "Any payments or occurrences by State Farm since then could not have violated the MCPA and could never be the subject of an MCPA action, because the statute, as amended, expressly prohibits such actions against insurance companies." *Id*. Thus, according to State Farm's reasoning, Schwein's action was not timely even under the MCPA's one-year-payment provision.

But it is not the payment itself that must constitute the complained-of conduct; were that the case, State Farm's argument would succeed. Instead, an action under the MCPA is timely when brought "no[] more than 1 year after the last payment *in a transaction involving the method, act, or practice which is the subject of the action*[.]" Mich. Comp. Laws § 445.911(7) (emphasis added). So it is not the payment itself that must violate the MCPA—the payment need only originate from a transaction that offends the Act. When that is the case (as Schwein alleges here), an action is timely if brought within one year of the last payment. And State Farm does not indicate that Schwein's action comes more than one year after its latest payment; only that any payments after March 2001 "could not have violated the MCPA and could never be the subject of an MCPA action[.]" Def.'s Br. 11. Again, that the payment itself did not violate the MCPA is irrelevant.

This conclusion, as Schwein emphasizes, is supported by the Michigan Supreme Court decision in *Converse*, 821 N.W.2d 679. In that case, the plaintiff filed a claim under the MCPA in December 2005. The court concluded that "[b]ecause plaintiff brought this action within one year of the last payment" it was "timely filed." *Id*. Thus, the court did not indicate that payments after March 2001 cannot support a timely MCPA claim. Quite the contrary, the court concluded that such a payment *can* do so. The conclusion here is no different. Schwein's action

comes within one year of a payment, which he alleges arose because of State Farm's violation of the MCPA, and his claim is therefore timely.

ii

In its final attempt to have Schwein's MCPA claim dismissed, State Farm argues that the claim is really a no-fault claim in disguise, and the one-year-back rule should prevent any damages for conduct that occurred before April 29, 2012. State Farm is once again mistaken.

In *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443 (Mich. 2008), the Michigan Supreme Court analyzed whether a "common-law cause of action for fraud is subject to the one-year-back rule of MCL 500.3145(1)." *Id*. at 445. In determining that the one-year-back rule only applies to actions under the No Fault Act, the court indicated as follows:

> Because the one-year-back rule only applies to actions brought under the no-fault act, and because a fraud action is not a no-fault action, i.e., an "action for recovery of personal protection insurance benefits payable under [the no-fault act] for accidental bodily injury," MCL 500.3145(1), but instead is an independent and distinct action for recovery of damages payable under the common law for losses incurred as a result of the insurer's fraudulent conduct, we hold that a common-law cause of action for fraud is not subject to the one-year-back rule.

*Id*. (brackets in original).

State Farm relies on *Grant v. AAA Michigan/Wisconsin, Inc.*, 724 N.W.2d 498 (Mich. Ct. App. 2006) to support its argument that the one-year-back rule should apply to Schwein's MCPA claim. In *Grant*, the Michigan Court of Appeals addressed the partial denial of a motion for summary judgment in the lower court. The underlying complaint included a claim under the No Fault Act and a claim under the MCPA. *Id*. at 499. The Court of Appeals affirmed the dismissal of the MCPA claim because "[b]y way of her MCPA claim, plaintiff ultimately seeks additional no-fault benefits to which she believes she is entitled." *Id*. at 502. To illustrate the point, the court indicated that "under the clear terms of plaintiff's complaint, plaintiff's relief would be the

- 19 -

no-fault benefits of which she was allegedly wrongfully deprived." *Id.* (brackets and internal quotation marks omitted).

These two decisions are not in conflict. Indeed, in *Cooper*, the Michigan Supreme Court established that an action that does not seek recovery of PIP benefits under the No Fault Act is not limited by the one-year-back rule. In *Grant*, the Michigan Court of Appeals indicated that although one of plaintiff's claims was labeled as an MCPA claim, the requested relief was really PIP benefits under the No Fault Act, and accordingly, the claim was properly limited by the No Fault Act's one-year-back rule. But as noted in *Cooper*, where a claim is "independent and distinct" from a no-fault action, that claim "is not subject to the one-year-back rule." *Cooper*, 751 N.W.2d at 445.

Applied here, Schwein's MCPA claim is not an end-run around the one-year-back rule. In his complaint, Schwein does not request PIP benefits under the no-fault act pursuant to his MCPA claim; instead, he requests damages "to which he is found by the trier of fact to be entitled[.]" Pl.'s Compl. ¶ 40. Further, in his response to State Farm's partial motion to dismiss, Schwein indicates that his MCPA claim "is separate and distinct from a claim under the No Fault Act, with different elements and bases for the causes of action . . . and with different damages[.]" Pl.'s Resp. 23 (citation omitted).

The two cases State Farm relies on in support of its argument—that Schwein's MCPA claim should be limited by the one-year-back rule—are both distinguishable. Noted above, *Grant* dealt with circumstances where a plaintiff labeled a claim as one under the MCPA, but then requested only the no-fault benefits to which she believed she was entitled. Accordingly, the claim was really one seeking PIP benefits, and pursuant to *Cooper*, properly restricted by the one-year-back rule. Likewise, State Farm's reliance on *Buntea v. State Farm Mut. Auto. Ins.*

*Co.*, No. 05-72399, 2007 WL 1500180 (E.D. Mich. May 22, 2007) is misplaced.  There, the court addressed an MCPA claim where "Plaintiff's Complaint failed to uncover any asserted damages besides the allegedly wrongful act of failing to pay Plaintiff all of the personal protection benefits to which she was entitled.  Nowhere in the Complaint does Plaintiff even assert that she has suffered any non-economic damages as a result of Defendant's conduct[.]"  *Id.* at *4.  This case is different, where Schwein's complaint requests other forms of relief.  At this stage, his MCPA claim will not be dismissed (although, importantly, it is limited to damages incurred before March 28, 2001).[7]

### IV

Accordingly, it is **ORDERED** that State Farm's motion for partial dismissal, ECF No. 7, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that the portion of Count I of Schwein's complaint, ECF No. 1, seeking No Fault Act benefits incurred before April 29, 2012 is **DISMISSED** without prejudice.

Dated: August 29, 2013

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 29, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

[7] The Court wishes to emphasize that Schwein has only cleared the hurdle presented by Federal Rule of Civil Procedure 12(b)(6).  Whether his MCPA claim will stand up to scrutiny under Rule 56, however, has yet to be addressed.