UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SANDY MEAD, Personal Representative
of the Estate of David L. Schwein,

      Plaintiff,                                  Case No. 13-12389
                                                               Honorable Thomas L. Ludington

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.
_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The issue before the Court is narrow. It arises out of Sandy Mead's claim for benefits under the Michigan Consumer Protection Act (MCPA) on behalf of David Schwein (Schwein), who is now deceased. Ms. Mead is acting as the personal representative of Schwein's estate. But the MCPA claim—as it relates to conduct occurring prior to July 31, 1998—is precluded by res judicata. Accordingly, State Farm Mutual Automobile Insurance Company's motion for partial summary judgment will be granted, and Ms. Mead's MCPA claim will be limited to conduct that occurred between July 31, 1998, and March 28, 2001.[1]

**I**

**A**

In 1980, Schwein suffered "catastrophic and life-altering injuries" when he was involved in a car accident in Wayne County, Michigan. Pl.'s Compl. ¶ 31, *attached as* Notice Removal Ex. 1, ECF No. 1. As a result of his injuries, Schwein was forced to "use[] a wheelchair and

---

[1] Mead's MCPA claim was previously limited to conduct that occurred before March 28, 2001. *See* Sept. 25, 2013 Order 2, ECF No. 18.

[was] unable to care for himself" while still alive. *Id*. ¶ 5. Schwein passed away on September 10, 2013. *See* Stip. Order Sub. 1, ECF No. 20. Sandy Mead (Mead) was appointed as the personal representative of Schwein's estate, and she was substituted as the Plaintiff in this action on October 21, 2013. *Id*.

At the time of the 1980 accident, Schwein maintained a no-fault auto insurance policy issued by State Farm. After the accident, he filed a claim for personal protection insurance (PIP) benefits under the policy. Then, on April 2, 1997, Schwein filed a lawsuit against State Farm in Michigan state court alleging that the company had refused "to pay [him] all [PIP] benefits in accordance with the applicable no-fault and contract provisions." *See* 1997 Compl. ¶ 8, *attached as* Def.'s Mot. Ex. A, ECF No. 21.

On July 30, 1998, in exchange for $25,000, Schwein signed a document entitled "Release of All First-Party No-Fault Claims Through July 31, 1998." *See* Release 1, *attached as* Def.'s Mot. Ex. B. As a part of the Release, Schwein "terminate[d] all claims incurred prior to July 31, 1998 . . . for past or present No-Fault benefits arising out of injuries, whether known or unknown, and damage of whatever nature, growing out of or connected with said accident, casualty or event . . . ." *Id*. at 1–2. On August 21, 1998, the Michigan state court entered a stipulation and order of dismissal "with prejudice . . . to all no-fault claims incurred through July 31, 1998, but without prejudice and without cost as to claims arising thereafter." Order Dismissal 2, *attached as* Def.'s Mot. Ex. C.

**B**

On April 29, 2013, Schwein filed a second lawsuit against State Farm, alleging one claim for breach of contract and one claim for violations of the MCPA. Specifically, Schwein contends that "State Farm has failed to pay for all benefits to which [he] is entitled under the

contract of insurance and the No Fault Act[,]" and that "State Farm has violated its duties to act honestly and to explain benefits under MCL § 500.2006(3) . . . ." Pl.'s Compl. ¶¶ 24, 35. State Farm filed a motion for partial dismissal, and Schwein's claims for no-fault benefits were limited to damages incurred on or after April 29, 2012, and his MCPA claim was limited to damages that resulted from conduct that occurred before March 28, 2001. *See* Aug. 29, 2013 Order 9–10, ECF No. 13; Sept. 25, 2013 Order 2.

As indicated above, Schwein passed away after the Court's decisions and Mead was substituted as the Plaintiff in this case. On October 24, 2013, State Farm filed a motion for partial summary judgment concerning the MCPA claim. It asserts that the claim should be further limited so that Mead can only recover for damages that resulted from conduct occurring after July 31, 1998 (the date of Schwein's release) and before March 28, 2001 (the endpoint for viable MCPA claims against insurers).

**C**

The parties agree that as of April 2, 1997—the date Schwein filed the 1997 lawsuit—he had no causes of action under the MCPA for any failure to honestly explain Schwein's no-fault policy rights. *See* Def.'s Reply 2, ECF No. 2; Pl.'s Resp. 18, ECF No. 23. This was so because of the Michigan Court of Appeals decision in *Kekel v. Allstate Ins. Co.*, 375 N.W.2d 455 (Mich. Ct. App. 1985) (per curiam). There, the court established that "the Michigan Consumer Protection Act specifically exempts transactions between an insurance company and its insured . . . ." *Id*. at 459. Thus, as of July 1985, Michigan law precluded MCPA claims such as the one Mead currently raises on Schwein's behalf.

But this changed approximately one decade later. On April 25, 1997, another Michigan Court of Appeals panel decided the case of *Smith v. Globe Life Ins. Co.*, 565 N.W.2d 877 (Mich.

Ct. App. 1997) (*Globe Life* I). There, the plaintiff "claim[ed] that she ha[d] a viable claim under the MCPA[,]" arguing that the Michigan Court of Appeals "erred in *Kekel v. Allstate Ins. Co.*" *Id*. at 884. The *Globe Life* I court "agree[d]," concluded that *Kekel* was wrongly decided, and established that the plaintiff had a viable claim under both § 4(a)(1) and—as relevant here—§ 4(2)(a) of the MCPA. *Id*. at 884–87.

The decision was appealed, and on July 13, 1999, the Michigan Supreme Court decided *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999) (*Globe Life* II). In *Globe Life* II, the Michigan Supreme Court partially reversed the *Globe Life* I decision as it related to § 4(a)(1) of the MCPA. *Id*. at 36–38. Concerning § 4(2)(a), however, the Michigan Supreme Court "agree[d] with the Court of Appeals that the *Kekel* Court misconstrued § 4(2) of the MCPA." *Id*. at 38. Accordingly, "[g]iving effect to both § 4(1) and § 4(2)," the court "conclude[d] that private actions are permitted against an insurer pursuant to § 11 of the MCPA" and affirmed the *Globe Life* I court's decision on that point. *Id*. at 39.

Of course, in 2000 the Michigan Legislature responded to *Globe Life* II and amended the MCPA to specifically establish that "[t]his act does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by chapter 20 of the insurance code of 1956[.]" Mich. Comp. Laws § 445.904(3). This amended language took effect March 28, 2001. Subsequently, "the MCPA is not applicable to insurance companies." *Cromer v. Safeco Ins. Co. of Am.*, No. 09-CV-13716, 2010 WL 1494469, at *4 (E.D. Mich. Apr. 14, 2010).

## II

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The focus must

be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). All justifiable inferences from the evidence must be drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III

State Farm argues that Mead's MCPA claim should be limited to conduct that occurred between July 31, 1998, and March 28, 2001, for two reasons: (1) Schwein's Release bars Mead from seeking damages for alleged violations of the MCPA that arose prior to July 31, 1998; and (2) the MCPA claim could have been raised in the 1997 lawsuit, and thus the claim is barred by res judicata. Because res judicata does bar Mead's MCPA claim as it relates to conduct that occurred prior to July 31, 1998, there is no need to address State Farm's alternative argument.

### A

Michigan's "broad" application of res judicata "bars claims arising out of the same transaction that could have been litigated in a prior proceeding, but were not." *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001) (citation omitted). Thus, in Michigan, res judicata applies to bar a claim when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Id*. (citation omitted). Michigan courts have emphasized that res judicata "bars not only claims already litigated, *but also every claim arising*

*from the same transaction that the parties*, *exercising reasonable diligence*, *could have raised but did not*." *Dallaire v. Treatment Works, Inc.*, No. 308028, 2012 WL 6602029, at *4 (Mich. Ct. App. Dec. 18, 2012) (per curiam) (emphasis added) (quoting *Adair v. State*, 670 N.W.2d 386 (Mich. 2004)). The determination whether res judicata will bar a subsequent claim is a question of law. *Pierson Sand & Gravel, Inc. v. Keeler Brass Co.*, 596 N.W.2d 153, 156 (Mich. 1999).

**B**

The parties do not dispute that the stipulation and order of dismissal entered in Schwein's 1997 lawsuit was a final decision on the merits and involved the same parties or their privies. *See*, *e.g.*, *Brownridge v. Michigan Mut. Ins. Co.*, 321 N.W.2d 798, 799 (Mich. Ct. App. 1982) ("A voluntary dismissal with prejudice is a final judgment on the merits for res judicata purposes."). Instead, the battle lines have been drawn along the second res judicata requirement—whether Schwein could have previously raised an MCPA claim.

Mead stresses that the res judicata doctrine "does not apply where a claim 'could [not] have been resolved in the first' case." Pl.'s Resp. 16–17 (footnote omitted). She argues that the Michigan Supreme Court did not decide *Globe Life* II until July 1999, and that Schwein had no opportunity to present an MCPA claim before *Globe Life* II "altered completely" the "legal landscape" for MCPA claims. *Id*. at 18.

But this is not entirely accurate. While the Michigan Supreme Court overruled *Kekel* in July 1999, on April 25, 1997, the Michigan Court of Appeals established that an MCPA claim against an insurer was viable. *See Globe Life* I, 565 N.W.2d at 886–87. The *Globe Life* I decision occurred just over three weeks after Schwein filed his 1997 complaint, and—notably—sixteen months before the stipulated order of dismissal was entered by the state court in August 1998.

Michigan Court Rule 7.215(J) governs the resolution of conflicts between different Michigan Court of Appeals decisions—like the conflict that existed between *Globe Life* I and *Kekel* before the decision in *Globe Life* II. The Rule provides that published Court of Appeals' decisions rendered after November 1990 must be followed:

> A panel of the Court of Appeals *must* follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.

Mich. Ct. R. 7.215(J)(1) (emphasis added). Important for the analysis here, *Kekel* was decided in 1985, and *Globe Life* I is a published disposition from 1997. Accordingly, after *Globe Life* I was decided, subsequent Michigan courts were obligated to follow it. So it does not matter that the Michigan Supreme Court affirmed the relevant holding in *Globe Life* I after Schwein's 1997 lawsuit had concluded; as of April 1997, an MCPA claim was valid under Michigan law.

Mead presents a number of cases for the proposition that a change in law forecloses the application of res judicata. But these cases are inapplicable because they address changes in the law that occurred after the initial case was completed—not while the case remained open—or because they do not deal with changes in the law at all and have been cited only for advantageous language. *See Hynes v. Port Cove Condominium Ass'n*, No. 271558, 2007 WL 602509, at *6 (Mich. Ct. App. Feb. 27, 2007) ("The doctrine of res judicata will also not apply where the law changes *after the completion of the initial litigation* . . . ." (internal quotation marks omitted) (emphasis added)); *Podgajski v. Tidik*, No. 244392, 2004 WL 2827664, at *1 (Mich. Ct. App. Dec. 9, 2004) (res judicata did not apply because parties were not previously adverse, not because of any change in the law); *UAW Local 6000 v. Dep't of Treasury*, No. 224159, 2001 WL 1320584, at *2 (Mich. Ct. App. Oct. 26, 2001) (res judicata did not apply because "second request could not have been resolved in the proceedings for the first request

because it was based on facts not known at the time the first request was made."); *Pike v. City of Wyoming*, 433 N.W.2d 768, 771 (Mich. 1988) (res judicata was not a bar "where a *subsequent* change in the law altered the legal principles upon which the case was to be resolved." (emphasis added)).

Instead, under the broad conception of res judicata employed by Michigan courts, changes in fact or law that occur during ongoing litigation do not preclude the application of res judicata. *See Begin v. Michigan Bell Tel. Co.*, 773 N.W.2d 271, 287 (Mich. Ct. App. 2009), *overruled on other grounds by Admire v. Auto-Owners Ins. Co.*, 831 N.W.2d 849 (Mich. 2013) ("That plaintiff did not learn all the facts that he claims support this tort claim until during the course of discovery in the first lawsuit does not preclude the application of res judicata."); *Dubuc v. Green Oak Twp.*, 117 F. Supp. 2d 610, 625 (E.D. Mich. 2000) (applying Michigan res judicata principles and concluding that, "[w]hen, in the course of a law suit, the plaintiff becomes aware of a new cause of action against the same defendant, the plaintiff should move to include the new claim or risk having the doctrine of claim preclusion apply to the omitted claim.").

Schwein could have moved to amend his complaint after the decision in *Globe Life* I was rendered to assert the MCPA claim that grew out of the same essential facts as his claim for no-fault benefits. Indeed, in his prior lawsuit, Schwein alleged that State Farm had "refused to pay" all of the benefits that were due under his no-fault policy. *See* 1997 Complaint ¶ 10. In this lawsuit, Mead alleges that State Farm violated its duty "to explain benefits" under the same policy "creat[ing] false impressions and misunderstanding" as to what was owed. Pl.'s Compl. ¶¶ 35, 37. However, Schwein chose not to amend his complaint to assert the MCPA claim— even though it was intimately related to his other allegations—and thus res judicata precludes the

assertion of those claims in the current case. Thus, Mead's MCPA claim will be limited to conduct that occurred after July 31, 1998, and before March 28, 2001.

**IV**

Accordingly, it is **ORDERED** that Farm's motion for partial summary judgment, ECF No. 21, is **GRANTED**.

Dated: February 12, 2014                                      s/Thomas L. Ludington
                                                                                      THOMAS L. LUDINGTON
                                                                                      United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 12, 2014.
                                      s/Tracy A. Jacobs
                                      TRACY A. JACOBS